# Crawford, Trustee, *v.* Rumpf, Appellant.

*Bankruptcy—Preference—Belief of creditor.*

Where the creditor of a firm of brokers knowing of the suspension of latter's business, and having no reason to believe that the firm was otherwise than hopelessly insolvent, secured by energetic action, and by the payment of a considerable sum of money, securities of the firm which gave him a preference over other creditors, it will be presumed that he " had reasonable cause to believe " that the transaction to which he was a party was intended thereby to give him a preference, within the meaning of the national bankrupt act.

Argued Jan. 6, 1903.    Appeal, No. 146, Jan. T., 1902, by defendant, from decree of C. P. No. 1, Phila. Co., June T., 1900, No. 823, on bill in equity in case of Frank M. Crawford, Trustee of Gustav Stahl and Joseph H. Straub, trading as Stahl & Straub, v. Gustav Rumpf.    Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Bill in equity to compel the return of securities.

BEITLER, J., found the facts to be as follows :

The facts of the case are, in the main, undisputed.    Stahl & Straub were bankers and brokers.    On November 24, 1899, they had on deposit, subject to check, some $200,000.    They were indebted to depositors and customers in amount approximating $1,000,000.    To one member of the firm, Joseph H. Straub, the firm's condition was unknown.    He attended to the buying and selling of stock at the brokers' board.    His partner looked after the finances and the books.    On November 24, their condition was so desperate that they could not go on. They could not pay their depositors or customers, and their suspension followed.    True, in the confused condition of their affairs there were hopes entertained by Straub and some of the customers that matters could, in some way, be righted, and the firm resume.    But the fact is too clear to be doubted that on November 24, the firm was hopelessly insolvent.    Had the defendant, Gustav Rumpf, reason to think otherwise ?    He had, in October, requested that 500 shares of Electric Company of America stock and 200 shares of Union Traction Company

stock purchased for him by the firm should be delivered to him. He had been put off by Stahl upon various pretexts. He had made similar requests in November, but with no success. After November 24, he again renewed his demands, but the stock was not forthcoming. Instead Stahl suggested that if Rumpf would pay off a balance due on a loan made by the West Philadelphia Trust Company he might have the collaterals held by the trust company. These collaterals were $20,000 of bonds of the Brooklyn Borough Gas 5's and twenty-six shares of Bergner & Engel preferred stock. While the bonds had not, in the strict sense, any market value, they had intrinsic value. Their par was $100. They had paid interest promptly. They had commanded par or over while Stahl & Straub "supported the market." When the firm failed there was no general sale for the bonds, and in the open market their price went down to $70.00, or, perhaps, was a little lower. There was, however, every reason to believe that they were worth more, and would bring that much. The Bergner & Engel stock was worth perhaps $40.00. Both stocks had a limited market, but they were, at the lowest price they had sold for between the date of the firm's suspension and the date when the defendant got them, worth considerably more than the sum due the trust company.

The defendant knew from Stahl that the trust company had been the firm's creditor at the time of the suspension for some $75,000; that the firm had been unable to respond to a call for cash on account of the loan or more collateral to secure it; that thereupon the trust company, to secure itself, had at various times exposed to sale part of the securities held by it, and had by these several sales secured enough to reduce the firm's indebtedness to it below $8,000. If the brewing company stock was worth $40.00, and the bonds worth $60.00, then the trust company had ample collateral for the balance due it. There was no reason why it should press the bonds and stock to sale, and the testimony of the treasurer of the company shows that there was, on its part, no intention to do so. The sales of the other collaterals had been made not against the opposition of the firm, but with the firm's knowledge and assent.

Every circumstance surrounding the firm's position after November 24, pointed to the fact that it was insolvent, and hopelessly so, and the trial judge finds that the defendant had no

reason to believe otherwise, and that he was pressing for an advantage over the other creditors, and intended to get such advantage by the arrangement subsequently consummated; and, in fact, got what he expected. The action of the firm preferred him. The rest of the creditors will get almost nothing.

At present figures Rumpf holds something over $8,000 (above his advance to the trust company) towards securing his claim of about $20,000.

The court entered a decree in favor of the plaintiff.

*Error assigned* was the order of the court.

*John G. Johnson*, with him *William Y. C. Anderson* and *William Jay Turner*, for appellant.—The learned trial judge, in deciding that the arrangement with the appellant was a preference, in violation of the act of 1898, dealt with the subject of insolvency precisely as it would have been dealt with under the act of 1867. The mere fact of suspension of payment by the firm he charged against the appellant as knowledge of a fact, which should have induced him to believe the firm was insolvent. He disregarded his sworn answer, not shaken upon subsequent cross-examination, that he did not know of the fact of insolvency, and he disregarded the circumstances which induced one of the partners and many of the creditors to believe that the suspension was but temporary and that the firm would liquidate its indebtedness.

It was held in Grant v. Bank, 97 U. S. 80, and in Stucky v. Masonic Sav. Bank, 108 U. S. 74 (2 Sup. Ct. Repr. 219) that it is not enough that a creditor has some cause to suspect the insolvency of his debtor. He must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt.

*Julius C. Levi*, for appellee.—The plaintiff in the court below did show by the record, which was introduced in evidence, that Stahl & Straub were insolvent; that certain collateral was passed over to Rumpf; that the effect of such transfer was to give Rumpf greater percentage then the other creditors, and that such transfer was made within four months prior to the date of filing the petition, and finally that Rumpf had reasonable cause to believe that he was obtaining a preference.

It is difficult to see how the creditors dealing with a firm could be put upon notice of insolvency, if the facts of this case were not sufficient: Crook v. People's Nat. Bank, 3 Am. B. R. 238; Conhaim's Case, 3 Am. B. R. 249; Strobel v. Knost, 3 Am. B. R. 631; Goldman v. Smith, 1 Am. B. R. 266; Kelly's Case, 1 Am. B. R. 306; Jacobs's Case, 1 Am. B. R. 518.

OPINION BY MR. JUSTICE POTTER, March 23, 1903:

The plaintiff, as trustee in bankruptcy, filed this bill, to compel the return of certain securities, which had been transferred to the defendant, by the firm of Stahl & Straub, under circumstances which it was alleged constituted an unlawful preference, and a violation of the provisions of the national bankruptcy act. The result of the transaction was, that by the payment of about $8,000, the appellant received securities of the par value of more than $20,000.

It is admitted that at the time of the arrangement, the firm of Stahl & Straub were really insolvent, and that appellant was aware that they had suspended business on November 24, 1899, and had not resumed at the date of the transaction, which was upon December 22, 1899. Six days later, a petition in bankruptcy was filed against them, and upon January 24, 1900, they were adjudged bankrupts.

We have then, the fact of insolvency and that the debtor firm made a transfer of securities within about a month before the filing of a petition in bankruptcy against them; and that this transfer of securities would enable the appellant to obtain a greater percentage of his debt than other creditors of the same class. Under the bankruptcy law, such a preference is voidable by the trustee, if the person receiving it " had reasonable cause to believe that it was intended thereby to give a preference."

It is here contended upon the part of appellant that, while he knew of the fact of Stahl & Straub's suspension of business, yet he did not know they were insolvent, and that he therefore could not be held to have had reasonable cause to believe that a preference was intended to be given him by the bankrupts. But the requirement of the bankruptcy law is not that the transferee should have had reasonable cause to believe that the transferrers were insolvent, but that a preference was intended. It was not even necessary to show that the appel-

lant in this case actually knew, or believed that a preference was intended. Reasonable cause for such belief was enough. A creditor to whom a transfer is made, under such circumstances as would arouse inquiry in the mind of a prudent man, is bound to ascertain whether or not the financial condition of the debtor is such as to constitute of the transfer a preference. He cannot shut his eyes, and plead ignorance of all the signs of iminent financial peril, which are obvious to all who have to do with the debtor. In the present case, these signs were notoriously apparent, and to none were they more so, than to the appellant, and in so far as the evidence shows no one was more stimulated thereby, or displayed greater activity in attempting to protect his interests.

The trial judge has found as a fact that the appellant had no reason to believe that the firm of Stahl & Staub were otherwise than hopelessly insolvent, after November 24, 1899. His conduct, and the energetic efforts which he made to secure his claim confirm this view. He was seeking to procure the payment of an antecedent debt. He was naturally alarmed, when the suspension occurred, and there is nothing in the testimony to show that his apprehensions were in any way lulled or allayed at or before the time when he obtained the transfer of the securities. Indeed he was able to accomplish this result only by the payment, or advancement, of a very considerable additional sum of money. Why should he have done this, unless with the expectation, and with the full belief that it would secure to him a greater percentage of his debt than would be received by other creditors of the same class. Under ordinary circumstances, his diligence would be most commendable; but in this case, it was strong evidence that he was seeking for himself, that which the bankruptcy law denies to any creditor, a preference over others of the same class.

The findings of fact by a chancellor are entitled to great weight, but aside from this we have no hesitation in saying, that the facts and circumstances disclosed by the testimony make it clear that the appellant had reasonable cause to believe that in the transfer of the securities to him, a preference was intended.

The assignments of error are overruled, the appeal is dismissed, and the decree is affirmed at the cost of the appellant.